UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WALTER ASCHER, TRUSTEE, | ) | |
| COOKIE FAMILY TRUST, an Illinois | ) | |
| Trust Organized under the Laws of the | ) | |
| State of Illinois, | ) | No. 13 C 7712 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| GRAND BANK FOR SAVINGS, FSB, | ) | |
| a Federal Savings Bank Incorporated | ) | |
| in Mississippi, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Walter Ascher, Trustee, and the Cookie Family Trust (the "Trust") filed this action against Defendant Grand Bank for Savings, FSB, ("Grand Bank") in the Circuit Court for the Eighteenth Judicial Circuit, DuPage County, Illinois. Grand Bank subsequently removed the case to this Court pursuant to 28 U.S.C. § 1331. Plaintiffs have moved for leave to amend their complaint pursuant to Federal Rule of Civil Procedure 15(a) and for an order remanding the case back to the Illinois state court. For the following reasons, the motion for leave to amend, R. 12, is granted, and the motion to remand is denied.

## BACKGROUND

On November 6, 2008, the Trust sold a property located in DuPage County, Illinois, to Dr. Robert Williamson for $480,000. R. 15 at 2. The Trust financed the purchase of the property for Dr. Williamson, and the parties entered into an

agreement called "Articles of Agreement for Deed," which required Dr. Williamson to make various payments to the Trust over the course of five years, including a down payment of $24,000, fifty-eight monthly installments of $3,000, and a final balloon payment of approximately $282,000, plus unpaid interest accruing at 6.5%. R. 15-2 at 2-3. On July 31, 2009, the Trust sold Grand Bank the right to collect the remaining payments Dr. Williamson owed to the Trust, and the parties signed a Mortgage Purchase Agreement ("MPA") which detailed the parties' respective rights. R. 15-2 ¶ 5. The agreement provided that Grand Bank was to collect $266,661 from Dr. Williamson over time in exchange for the $180,161.50 it paid to the Trust. R. 15-2 ¶ 6.

Shortly after the parties entered into the MPA and after two additional payments by Dr. Williamson, the Trust became aware that Dr. Williamson would be unable to continue paying off the mortgage. R. 15-2 ¶ 7. The Trust then made the $3,000 payment to Grand Bank for the next twenty-two months. R. 15-2 ¶ 8. At some point thereafter, the Trust sold the property to a third party who obtained outside funding. R. 15-2 ¶ 9. At closing, the Trust paid $245,685. to pay off the MPA. R. 15-2 ¶ 10. In total, Grand Bank received $317,685.00 (i.e., twenty-four $3,000 payments ($72,000) plus the $245,685 closing payoff amount), representing an amount $137,523.50 greater than the principal amount of the mortgage loan and $51,024.00 greater than the amount Grand Bank would have received over the life of the loan. R. 15-2 ¶¶ 9-10.

Plaintiffs originally filed suit against Grand Bank in Illinois state court alleging only an unjust enrichment claim. R. 1-1. Plaintiffs amended their complaint on September 28, 2013, to include common law claims for unconscionability and unjust enrichment (Count I); a declaratory judgment under the Illinois Mortgage Act, 765 ILCS 905/1, *et seq.* (Count II); violations of the Home Ownership Equity Protection Act ("HOEPA"), 15 U.S.C. §§ 1639, *et. seq.* (Count III); violations of the Illinois High Risk Home Loan Act, 815 ILCS 137/1, *et seq.* (Count IV); and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 765 ILCS 505/1, *et seq.* (Count V). R. 15-2. On October 28, 2013, Grand Bank removed the action to this Court because Count III of the amended complaint presented a federal question.

## ANALYSIS

Plaintiffs want the case back in state court. They seek leave to amend their complaint pursuant to Federal Rule of Civil Procedure 15(a) in order to dismiss Count III, their HOEPA claim. They contend this would eliminate this Court's jurisdiction, as the HOEPA claim is what originally provided the basis to have the case heard in federal court. R. 12. Assuming the Court allows the amended complaint to be filed without the federal claim, Plaintiffs also seek an order remanding the case back to state court. R. 12 ¶¶ 10, 12. Grand Bank opposes the dual motion, arguing (1) that leave to amend should not be granted, and alternatively, (2) that by federal law, this Court has jurisdiction because Counts I,

II, IV, and V are entirely preempted by the field of federal lending regulation and, thus, are actually federal claims disguised as state law claims. R. 15 at 7-11.

I. **Leave to Amend**

A party may move to amend its complaint under the Federal Rules of Civil Procedure, which provide that leave to amend should be "freely given when justice so requires." Fed. R. Civ. P. 15(a); *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007). Leave to amend is "inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 181 (1962); *Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir. 1992). A party may be granted leave to amend even when the amendment will dismiss the federal claims and ultimately require a federal court to remand the case to state court. *Millar v. Bay Area Rapid Transit Dist.*, 236 F. Supp. 2d 1110, 1113-21 (N.D. Cal. 2002).

In this case, there are no competing considerations that compel the Court to deny Plaintiffs' motion for leave to amend. This is Plaintiffs' first attempt in this Court to amend their complaint, there has been no undue delay by Plaintiffs, and this is not a futile attempt to cure a deficiency that the Court previously identified. *Cf. Airborne Beepers & Video, Inc.*, 499 F.3d at 666-67. Accordingly, Plaintiffs' request for leave to amend is granted.

II. **Order for Remand**

When the case was initially removed, the Court possessed original jurisdiction because Plaintiffs' complaint "[arose] under the . . . laws . . . of the United States," s*ee* 28 U.S.C. § 1331, because of the HOEPA claim in Count III. Given Plaintiffs' request to remand, the Court must determine whether there is another basis (aside from the federal claim in Count III) for the Court to retain jurisdiction. Grand Bank suggests that the Home Owners' Loan Act ("HOLA"), 12 U.S.C. §§ 1461, *et seq.*, and HOEPA preempt Plaintiffs' state claims, which if true, would provide that basis.

"In all preemption cases, "[the Court] start[s] with the assumption that the historic police powers of the States were not to be superseded by [a federal statute] unless that was the clear and manifest purpose of Congress." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 576 (7th Cir. 2012) (quoting *Wyeth v. Levine*, 555 U.S. 555, 565 (2009)). Pursuant to the Supremacy Clause, however, Congress has the authority to preempt state law. *La. Pub. Serv. Comm'n v. FCC,* 476 U.S. 355, 368 (1986); *Time Warner Cable v. Doyle,* 66 F.3d 867, 874 (7th Cir. 1995). Federal preemption of state law can occur in three circumstances: (1) express preemption, where Congress explicitly preempts state law; (2) implied preemption, where Congress has occupied the entire field (field preemption); and (3) implied preemption, where there is an actual conflict between federal and state law (conflict preemption). *English v. Gen. Elec. Co.,* 496 U.S. 72, 78-79 (1990); *Am. Agric. Movement, Inc. v. Bd. of Trade of Chi.,* 977 F.2d 1147, 1154 (7th Cir. 1992). Field preemption applies to state law "if federal law so thoroughly occupies a legislative

5

field 'as to make reasonable the inference that Congress left no room for the States to supplement it.'" *Wigod*, 673 F.3d at 576 (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992)) (internal quotation marks omitted).

As it relates to this case, the Supreme Court has explained, "Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). However, as a corollary to the well-pleaded complaint rule, it has been established "that Congress may so completely preempt a particular area that any civil complaint raising [a] select group of claims is necessarily federal in character." *Id.* at 63-64. Thus, a claim where field preemption applies satisfies the "federal question" prong authorizing this Court's jurisdiction. *See id.* at 63. As the court in *Lister v. Stark*, 890 F.2d 941, 943 (7th Cir. 1989), explained, "[The] 'complete preemption' exception permits recharacterization of plaintiff's state law claim to a federal claim *so that removal is proper*." (emphasis added)

Grand Bank contends that the Court retains jurisdiction over the case even if Count III is dismissed because field preemption applies—i.e., Plaintiffs' claims in Counts I, II, IV, and V are preempted by HOLA and its implementing regulations, 12 C.F.R. §§ 500-99; R. 15 at 7-10 (citing *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008) ("HOLA and its following agency regulations [are] so pervasive as to leave no room for state regulatory control.")); *see* 12 C.F.R. §§ 545.2,

6

560.2.[1] Thus, according to Grand Bank, the Court's jurisdiction is not affected by the dismissal of Count III. *See Metro. Life*, 481 U.S. at 63. In response, Plaintiffs argue that a preemption defense is not sufficient to establish original jurisdiction over state law claims and that it is appropriate for an Illinois state court to analyze them. R. 12 ¶¶ 6, 10.

Initially, Plaintiffs suggest that the Court should interpret HOLA preemption in light of the Congressional intent demonstrated by the enactment of the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010) ("Dodd–Frank"), which became effective on July 21, 2010. Dodd-Frank reduces the federal government's preemptive authority under HOLA, HOEPA, and other federal lending and banking laws. R. 19 at 6-8. "Courts have uniformly held, however, that the provisions of Dodd–Frank are not retroactive, and HOLA preemption applies to mortgages originated before either July 21, 2010 or July 21, 2011." *Henning v. Wachovia Mortgage, FSB*, 2013 WL 5229837, at *5 (D. Mass. Sept. 17, 2013). The Court must therefore analyze preemption of Plaintiffs' state law claims under the federal legislation in effect during the time period at issue here.

In 1989, the Office of Thrift Supervision ("OTS") was granted broad powers to "regulate and examine savings associations" under HOLA. *Henning*, 2013 WL 5229837, at *4 (citing *Dixon v. Wells Fargo Bank, N.A.*, 798 F. Supp. 2d 336, 353 n. 6 (D. Mass. 2011)). Under 12 C.F.R. § 545.2, the OTS claimed exclusive authority

---

[1] Grand Bank articulates other preemption arguments, but the Court need not address them in light of its conclusion regarding HOLA preemption on Counts II and VI.

7

"to regulate all aspects of the operations of Federal savings associations," which was "preemptive of any state law" purporting to address this subject matter. The OTS also declared its "occup[ancy] [of] the entire field of lending regulation," in order to provide federal savings associations with "maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme." § 560.2(a).

The OTS regulations provide a clear procedure for determining whether HOLA preempts a state law: "[a] court must first consider whether the state law at issue is one of the illustrative examples which are definitively preempted under 12 C.F.R. § 560.2(b)." *Henning*, 2013 WL 5229837, at *4. Section 560.2(b)'s list of areas preempted includes the following:

> (1) Licensing, registration, filings, or reports by creditors;
>
> * * *
>
> (4) The terms of credit, including *amortization* of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
>
> (5) Loan-related fees, including without limitation, initial charges, late charges, *prepayment penalties*, servicing fees, and overlimit fees;
>
> * * *
>
> (9) *Disclosure* and advertising, *including laws requiring specific statements, information, or other content to be included in* credit application forms, credit solicitations, billing statements, *credit contracts, or other credit-related documents* and laws requiring creditors to supply copies of credit reports to borrowers or applicants;
>
> * * *
>
> (10) Processing, origination, servicing, *sale or purchase of, or investment or participation in, mortgages*;
>
> (11) Disbursements and repayments;

8

(12) *Usury and interest rate ceilings* to the extent provided in 12 U.S.C. 1735f-7a and part 590 of this chapter and 12 U.S.C. 163(g) and § 560.110 of this part[.]

12 C.F.R. § 560.2(b)(1), (4), (5), (9), (10), (11), and (12) (emphasis added).

The OTS's regulations, as discussed in Section 560.2(b), make clear that state laws governing amortization of loans; prepayment penalties; disclosures; the sale, of purchase of, investment in or participation in mortgages; and usury and interest rate ceilings are preempted. *See* 12 C.F.R. § 560.2(b)(4), (5), (9), 10, and (12). Each of the Illinois laws Plaintiffs rely on in Counts II and IV encompass that subject matter.

The parties agree that a central issue in the case is whether the MPA constitutes a mortgage. *See* R. 1 at 6 n.1; R. 12 ¶ 8. Count II of Plaintiffs' complaint is a request for a declaratory judgment that the MPA is a "mortgage" under the Illinois Mortgage Act, 765 ILCS 905/1, *et seq.* 765 ILCS 905/5 provides: "Every deed conveying real estate, which shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage." Thus, whether the MPA is a mortgage directly implicates Section 560.2(b)(10). Similarly, in Count IV, Plaintiffs allege violations of the Illinois High Risk Home Loan Act, 815 ILCS 137/1, *et seq.*, which "protect[s] borrowers who enter into high risk home loans from abuse that occurs in the credit marketplace when creditors and brokers are not sufficiently regulated in Illinois." 815 ILCS 137/5. Specifically, Count IV alleges that Grand Bank violated the Illinois High Risk Loan Act as a "lender," 815 ILCS 137/10, by (1) failing to conduct an

9

ability-to-repay analysis, R. 15-2 ¶¶ 51-52 (citing 815 ILCS 137/15, 20); (2) failing to act in good faith, R. 15-2 ¶¶ 61-62 (citing 815 ILCS 137/25); (3) failing to make certain disclosures, including providing a credit counseling notice, R. 15-2 ¶¶ 57-60 (citing 815 ILCS 137/95, 100); and (4) establishing an invalid prepayment penalty when offering a "high risk home loan." R. 15-2 ¶¶ 53-56 (citing 815 ILCS 137//30). These allegations and corresponding state provisions also implicate Section 560.2(b).

Accordingly, because Counts II and IV of Plaintiffs' complaint are based on state laws that are expressly preempted in Section 560.2(b), they are actually "federal question" claims. The Court therefore has jurisdiction over the case regardless of whether Count III is dismissed. *See Metro. Life Ins. Co. v. Taylor*, 481 at 63-64; *Lister*, 890 F.2d at 943.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for leave to amend its complaint is granted, R. 12, and its motion for an order remanding this case to state court is denied. Plaintiffs have 21 days to file an amended complaint if they choose to do so. A status hearing is set for April 9, 2014, at 9:00 am.

ENTERED:

*Thomas M Durkin*
Honorable Thomas M. Durkin
United States District Judge

Dated: March 14, 2014

10